WORLD WIDE PROSTHETIC SUPPLY, INC., Plaintiff-Appellant,

v.

Robert J. MIKULSKY and Karen Mikulsky, d/b/a Enterprise Machine and Voyager, Inc., Defendants-Respondents.†

Court of Appeals

*No. 00–1751. Submitted on briefs March 13, 2001.—Decided May 15, 2001.*

## 2001 WI App 133

(Also reported in 631 N.W.2d 253.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Terry J. Gerbers* of *Gerbers Law Offices* of Green Bay.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Winston A. Ostrow, Donald L. Romundson* and *Ross J. Nova* of *Godfrey & Kahn, S.C.* of Green Bay.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. World Wide Prosthetic Supply, Inc., brings this interlocutory appeal from an order granting a mistrial. The trial court granted the mistrial after World Wide, pursuing a claim for misappropriation of trade secrets, presented evidence that the alleged misappropriator manufactured and marketed a defective product incorporating the claimed trade secrets. This court granted World Wide's petition for leave to appeal to determine whether evidence that Voyager, Inc. marketed the defective product can properly be admitted as evidence of damages in an action under WIS. STAT. § 134.90.[1] We conclude that the evidence is admissible and, therefore,

---

[1] We concluded that granting World Wide's petition for leave to appeal would clarify matters in the trial court and could hasten termination of the litigation. *See* WIS. STAT. § 808.03(2)(a). All statutory references are to the 1999–2000 version unless otherwise noted.

reverse and remand for a new trial consistent with this opinion.

## BACKGROUND

¶ 2.    Although the sole issue on appeal presents a question of law, a brief summary of the facts World Wide has alleged is appropriate.[2] World Wide produces and sells endoskeletal prosthetic components for the knee and foot. World Wide entered into a manufacturing arrangement with Robert and Karen Mikulsky, doing business first as Enterprise Machine and later as Voyager, Inc. (collectively, Voyager). Voyager produced light-weight prosthetic components for World Wide that World Wide in turn delivered to a variety of distributors.

¶ 3.    World Wide received complaints from its customers that some of the components Voyager manufactured had cracked and broken. World Wide and Voyager disagreed whether this breaking resulted from abuse by the end user or defects in manufacturing. Ultimately, World Wide made arrangements to have its product manufactured by another machinist.

¶ 4.    After the relationship between World Wide and Voyager ended, Voyager continued to manufacture the prosthetic components without making any changes to the design or appearance of the components.

---

[2] We note that the Mikulskys and Voyager, Inc., strenuously contest these allegations. Whether World Wide can establish Voyager misappropriated a trade secret is not an issue before this court; the fact finder will ultimately make that determination. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980) (appellate courts are not empowered to find facts). Instead, at issue here is whether World Wide can introduce specific evidence of damages that the fact finder will consider if it concludes there has been a misappropriation.

Voyager marketed the components directly to the prosthetic industry.

¶ 5. World Wide sued Voyager under several legal theories, including misappropriation of trade secrets as defined in WIS. STAT. § 134.90.[3] World Wide alleged that Voyager's continued production of the components constituted misappropriation of a trade secret and that the misappropriation had caused World Wide to lose profits. World Wide claimed that one reason it lost profits was because Voyager's components were defective. World Wide claimed that these defective products, which looked like World Wide's components, caused buyers to lose confidence in World Wide's components, resulting in reduced sales.

¶ 6. At trial, World Wide attempted to introduce evidence that Voyager manufactured and marketed defective products incorporating the claimed trade secrets in support of its claim for damages. World Wide's theory was that although it suffered loss from Voyager's direct competition with World Wide's products, the most substantial financial loss was reduced consumer confidence and lost sales that were caused by Voyager's misappropriation, manufacture and distribution of defective components that looked like World Wide's components.

¶ 7. Voyager objected to this evidence, arguing that infiltrating the market with an inferior substitute is not relevant to a trade secrets claim. Voyager contended that whether an allegedly inferior product damaged World Wide's reputation was relevant only to other legal theories that were not pled or advanced in the litigation.

---

[3] World Wide's other legal theories were breach of contract, tortious interference with contract and breach of implied duty of good faith.

¶ 8. The trial court initially allowed some testimony that the components were defective, but later reconsidered the issue and concluded that the evidence had been erroneously admitted. Ultimately, the trial court granted Voyager's motion for mistrial and ordered a new trial.

¶ 9. We accepted World Wide's petition for leave to appeal to determine whether evidence that Voyager marketed defective products incorporating the trade secrets can properly be admitted as evidence of damages in an action under WIS. STAT. § 134.90. We conclude that the evidence is admissible and, therefore, reverse the trial court's order and remand the case for a new trial.

## DISCUSSION

██

¶ 10. Resolution of this appeal requires interpretation of WIS. STAT. § 134.90(4), a question of law we review de novo. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989). Section 134.90 was created in 1986 when the legislature passed the Wisconsin version of the Uniform Trade Secrets Act, which created a new definition of trade secret and established remedies available to those injured by the tort of trade secret misappropriation. *See id.* at 851.

██

¶ 11. In *Minuteman*, our supreme court recognized that there are three issues that arise when examining an alleged violation of WIS. STAT. § 134.90: (1) whether the material complained about is a trade secret under § 134.90(1)(c); (2) whether a misappropriation has occurred in violation of § 134.90(2); and (3) if both of these requirements are met, what type of relief

is appropriate under § 134.90(3) or (4).[4] *See Minuteman*, 147 Wis. 2d at 853–54.

■

¶ 12.  Wisconsin does not have a standard jury instruction for WIS. STAT. § 134.90 trade secrets cases. However, the American Bar Association has drafted model jury instructions for use in state trade secrets cases. *See* MODEL JURY INSTRUCTIONS, BUSINESS TORTS LITIGATION, ABA SECTION OF LITIGATION (3d ed. 1996). The instructions state that to establish a prima facie case, a plaintiff must prove the following:

(1)  that plaintiff possessed a trade secret;

(2)  that defendant acquired the trade secret (a) through improper means, (b) through a confidential relationship with plaintiff, or (c) under other circumstances giving rise to a duty not to use or disclose the trade secret without plaintiff's permission;

(3)  that defendant used or disclosed the trade secret without plaintiff's permission [practice note omitted]; and

(4)  that (a) plaintiff suffered harm as a direct and proximate result of the defendant's use or disclosure of plaintiff's trade secret, or (b) defendant obtained benefit from such use or disclosure.

*See id.* at § 8.02.

¶ 13.  At issue is World Wide's attempt to introduce evidence relevant to the relief afforded by WIS. STAT. § 134.90(4). World Wide seeks to introduce evidence that Voyager's misuse of the trade secret (*i.e.*,

---

[4] WISCONSIN STAT. § 134.90(3) provides for injunctive relief and WIS. STAT. § 134.90(4) provides for damages.

manufacture and distribution of defective products) caused World Wide to lose profits. Whether the evidence is admissible depends on whether the proffered testimony is relevant to damages. Thus, in order to determine whether the evidence is admissible, we must decide whether World Wide could potentially recover damages under WIS. STAT. § 134.90(4) that were allegedly caused when Voyager misappropriated, manufactured and distributed defective components. Because neither this court nor the Wisconsin Supreme Court has previously interpreted § 134.90(4), this appeal presents an issue of first impression.[5]

¶ 14.   WISCONSIN STAT. § 134.90(4) provides:

> DAMAGES. (a) Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of a violation of sub. (2) renders a monetary recovery inequitable, a court may award damages to the complainant for a violation of sub. (2). A court may award damages in addition to, or in lieu of, injunctive relief under sub. (3). Damages may include both the actual loss caused by the violation and unjust enrichment caused by the violation that is not taken into account in computing actual loss. Damages may be measured exclusively by the imposition of liability for a reasonable royalty for a violation of

---

[5] Although there are no Wisconsin state court cases interpreting WIS. STAT. § 134.90(4), we can look to Uniform Trade Secrets Act decisions in other jurisdictions for guidance. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 858, 434 N.W.2d 773 (1989) ("Decisions by other jurisdictions on questions involving the [Uniform Trade Secrets Act] are to be given careful consideration by the courts in Wisconsin."); WIS. STAT. § 134.90(7) ("This section shall be applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws.").

sub. (2) if the complainant cannot by any other method of measurement prove an amount of damages which exceeds the reasonable royalty.

(b)   If a violation of sub. (2) is wilful and malicious, the court may award punitive damages in an amount not exceeding twice any award under par. (a).

(c)   If a claim that sub. (2) has been violated is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or a violation of sub. (2) is wilful and deliberate, the court may award reasonable attorney fees to the prevailing party.

¶ 15.   World Wide argues that under the plain words of the statute, its damages "may include both the actual loss caused by the violation and unjust enrichment caused by the violation that is not taken into account in computing actual loss." *See* WIS. STAT. § 134.90(4)(a). World Wide contends that its "actual loss" includes the loss of significant sales and market share caused by Voyager's manufacture and distribution of defective components that was made possible by its misappropriation of World Wide's trade secret.

¶ 16.   In response, Voyager contends that WIS. STAT. § 134.90 does not allow recovery of damages based on inferiority. It observes:

> World Wide must be claiming that Voyager did something else (besides misappropriate the trade secret) which adversely affected the reputation of products of that kind in the marketplace. If so, the harm results not from any misappropriation of trade secret, but some other "violation" which, if actionable at all, is not actionable under § 134.90, the Uniform Trade Secrets Act.

¶ 17. World Wide is seeking damages commonly awarded in trade secrets cases: lost profits and other damages. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45, cmt. e (1995) (a frequent element of loss resulting from appropriation of a trade secret is the lost profit that the plaintiff would have earned in the absence of the use by the defendant). At issue is whether "actual loss caused by the violation" can include losses that result when a misappropriator uses a product so unsuccessfully that the plaintiff's business suffers.

¶ 18. We conclude that these losses are potentially compensable. In most trade secrets cases, the plaintiff seeks to introduce evidence that the defendant successfully produced and sold a product derived from the plaintiff's trade secret. *See, e.g., Mangren Research & Dev. Corp. v. National Chem. Co.,* 87 F.3d 937 (7th Cir. 1996); *In re Innovative Constr. Sys., Inc.,* 793 F.2d 875 (7th Cir. 1986). This evidence is relevant to whether the "plaintiff suffered harm as a direct and proximate result of the defendant's use." *See* MODEL JURY INSTRUCTIONS, *supra,* at § 8.02.

■

¶ 19. If evidence of a defendant's successful production and marketing of a product is relevant to damages, it follows that a plaintiff should also be able to present evidence that both its sales and the defendant's sales suffered after the defendant introduced an allegedly inferior product into the market. This evidence is admissible because it is relevant to plaintiff's potential claim for actual loss under WIS. STAT. § 134.90(4), which can include consequential damages.

■

¶ 20. "Consequential damages to the plaintiff from loss of the trade secret are recoverable if ade-

quately proven." *See* 2 DAN B. DOBBS, LAW OF REMEDIES § 10.5(3), at 692 (2d ed. 1993). Thus, World Wide can potentially recover those damages that are the natural and proximate result of Voyager's wrongful conduct, which in this case could include losses it suffered because Voyager distributed a defective product incorporating the trade secret. *See Madsen v. Threshermen's Mut. Ins. Co.*, 149 Wis. 2d 594, 606, 439 N.W.2d 607 ( Ct. App. 1989) (consequential damages are the natural and proximate result of an actor's wrongful conduct).[6]

¶ 21.   Our conclusion is not unprecedented.[7] In *Micro Data Base Sys. v. Dharma Sys.*, 148 F.3d 649 (7th Cir. 1998), the court considered the defendant's challenge to damages awarded in a trade secrets case. The court concluded that the jury could appropriately award damages for the loss of business the plaintiff experienced when a third party was offended by the plaintiff's self-protection measures that were necessitated by the defendant's misappropriation. The court explained:

> The loss of future business with [the third party] was a foreseeable consequence of [the defendant's]

---

[6] *See also* MODEL JURY INSTRUCTIONS, BUSINESS TORTS LITIGATION, ABA SECTION OF LITIGATION, § 8.06[1] (3d ed. 1996) ("If you find that plaintiff would have realized profits from employing trade secrets in its business that it has lost due to the wrongful conduct of defendant, then you may measure damages by the amount of such lost profits.").

[7] We recognize, however, that it is difficult to locate trade secrets cases specifically awarding consequential damages for misappropriation of trade secrets, a tort. In *Micro Data Base Sys. v. Dharma Sys.*, 148 F.3d 649, 658 (7th Cir. 1998), Chief Judge Richard Posner observed that the court was "surprised not to have found any case in which consequential damages were awarded" for misappropriation of a trade secret.

misconduct, and so [the plaintiff] was entitled to seek damages for that consequence. Consequential damages, as long as they are reasonably foreseeable, are the norm in tort cases . . . and the misappropriation of a trade secret is a tort.

*Id.* at 658.

¶ 22.   The *Micro Data* court also predicted a situation similar to that presented here:

It's as if [the defendant], having stolen a program from [the plaintiff], inserted a bug in it as a result of which the program didn't work, and buyers blamed [the plaintiff] and refused to do any further business with it. That would be a consequence of misappropriation, and [the plaintiff] would be entitled to the foreseeable damages flowing from that consequence.

*Id.* This reasoning is persuasive. World Wide is entitled to present evidence of damages that it alleges are consequences of the misappropriation of its trade secret, including evidence of how Voyager used its trade secret to manufacture components.

■

¶ 23.   Once this evidence is admitted, it will be up to the jury to determine which, if any, of World Wide's losses were "caused by the violation" of WIS. STAT. § 134.90(4). Although questions of causation usually arise in negligence and criminal cases, we see no reason to depart from Wisconsin's unique view of causation in a case not involving negligence or crime. The Wisconsin test for determining causation is whether the conduct at issue was a substantial factor in producing the plaintiff's harm. *Estate of Cavanaugh v. Andrade*, 202 Wis. 2d 290, 306, 550 N.W.2d 103 (1996). There may be more than one cause of an injury.

*Ehlinger v. Sipes*, 155 Wis. 2d 1, 13, 454 N.W.2d 754 (1990). The defendant's conduct is a substantial factor in producing the harm if it leads the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense. *See id.* at 12.

¶ 24.   Whether Voyager's alleged misappropriation of trade secrets was a substantial factor in producing World Wide's harm presents a question of fact for the jury. *See Cavanaugh*, 202 Wis. 2d at 306. Accordingly, evidence of how Voyager used World Wide's trade secret (*i.e.*, to produce and market a defective product) is admissible to prove that Voyager's misappropriation caused World Wide's actual loss, and the extent of that loss.

¶ 25.   Accordingly, we conclude that the trial court erred when it concluded that World Wide could not introduce evidence that the product Voyager allegedly produced and distributed after misappropriating World Wide's trade secret was defective, and that World Wide suffered loss as a result. We conclude that the evidence is admissible to prove that World Wide suffered "actual loss caused by the misappropriation." *See* WIS. STAT. § 134.90(4). Therefore, we reverse and remand for a new trial consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.