753 N.W.2d 529 (2008)
2008 WI App 73
In the Interest of BRANDON L.Y., a Person Under the Age of 18.
Richland County Health and Human Services, Petitioner-Respondent,
v.
Brandon L.Y., Respondent-Appellant.[]
No. 2007AP834.
Court of Appeals of Wisconsin.
Submitted on Briefs November 28, 2007.
Opinion Filed April 24, 2008.
*530 On behalf of the respondent-appellant, the cause was submitted on the briefs of Suzanne Edwards, Law Office of Suzanne Edwards, Dodgeville.
On behalf of the petitioner-respondent, the cause was submitted on the brief of Wm. Andrew Sharp, district attorney, Richland Center.
Before HIGGINBOTHAM, P.J., DYKMAN and LUNDSTEN, JJ.
¶ 1 DYKMAN, J.
Brandon L.Y. appeals from an order finding him a juvenile in need of protection and services (JIPS). Brandon contends that the trial court erred by finding that Riverdale Elementary Middle School provided evidence that it complied with the required statutes to support a JIPS order. We conclude that the record establishes that Riverdale provided evidence of all of the requirements for a JIPS order, and therefore affirm.

Background
¶ 2 The following facts are taken from the hearing testimony and exhibits and the trial court's findings.[1] Additional facts will *531 be provided as necessary in the discussion section. Brandon was a student at Riverdale for the 2005-06 school year. On November 22, 2005, Riverdale's assistant principal, Shari Hougan, sent a letter to Brandon's mother stating that Brandon had six excused and three unexcused absences. The letter stated that a child is considered a habitual truant if he or she has five or more unexcused absences. On January 5, 2006, Hougan sent another letter to Brandon's mother, stating that Brandon had seven excused and six unexcused absences, and was therefore habitually truant. Also on January 5, 2006, Hougan referred Brandon to Richland County Health and Human Services (HHS) due to concerns about his continuing truancy.
¶ 3 On March 14, 2006, Hougan and Brandon's mother met to discuss Brandon's Individualized Education Plan (IEP). Hougan testified that during the meeting, they discussed Brandon's behavior and attendance. Hougan stated that they discussed transferring Brandon to Wyalusing Academy, where Brandon would receive a more structured, one-on-one education. Brandon's mother agreed to the idea, although she was concerned about whether he would actually attend. Brandon was transferred to Wyalusing beginning March 20, 2006. His attendance continued to be poor. On March 24, 2006, Hougan again contacted HHS to report Brandon's continuing attendance problems.
¶ 4 HHS filed a JIPS petition for Brandon on March 28, 2006, alleging that he was a habitual truant. Following a hearing, the trial court found that Brandon was a juvenile in need of protection or services based on his habitual truancy. Brandon appeals.

Standard of Review
¶ 5 The construction of a statute is a question of law. Minuteman, Inc. v. Alexander, 147 Wis.2d 842, 853, 434 N.W.2d 773 (1989). Similarly, the application of a statute to undisputed facts is a question of law. Id. We accept a circuit court's findings of fact unless they are clearly erroneous. Id.

Discussion
¶ 6 Brandon contends that the trial court erred in finding that Riverdale provided evidence that it complied with the required statutes to support a JIPS order under WIS. STAT. § 938.13(6) (2005-06).[2] He contends that (1) Riverdale was required to provide notice of a meeting to Brandon's mother under WIS. STAT. § 118.16(2)(cg) to support a JIPS order, and did not do so; and (2) Riverdale did not provide evidence that it performed any of the required activities under WIS. STAT. § 118.16(5). We disagree and conclude that Riverdale provided evidence that it conducted all the required activities to support a JIPS petition under § 938.13(6), which does not include a requirement to *532 provide notice of a meeting under § 118.16(2)(cg).
¶ 7 To resolve whether Riverdale provided evidence that it had conducted all the required activities to support a JIPS order, we must construe WIS. STAT. §§ 938.13(6) and 118.16. We begin statutory construction with the language of a statute. State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110. "If the meaning of the statute is plain, we ordinarily stop the inquiry." Id. (citation omitted).
¶ 8 WISCONSIN STAT. § 938.13(6) states that a court may order a juvenile in need of protection or services if "the juvenile is habitually truant from school and evidence is provided by the school attendance officer that the activities under s. 118.16(5) have been completed or were not required to be completed as provided in s. 118.16(5m)." Thus, by its plain language, § 938.13 allows a JIPS order only if the requirements of § 118.16(5) have been met or were not required under one of the exceptions in subsection (5m).[3]
¶ 9 We turn, then, to WIS. STAT. § 118.16(5) to determine what activities are required by a school to support a JIPS order on the basis of habitual truancy.[4] Section 118.16(5) provides:
Except as provided in sub. (5m), before any proceeding may be brought against a child under s. 938.13(6) for habitual truancy[,] . . . the school attendance officer shall provide evidence that appropriate school personnel in the school or school district in which the child is enrolled have, within the school year during which the truancy occurred, done all of the following:
(a) Met with the child's parent or guardian to discuss the child's truancy or attempted to meet with the child's parent or guardian and received no response or were refused.
(b) Provided an opportunity for educational counseling to the child to determine whether a change in the child's curriculum would resolve the child's truancy and have considered curriculum modifications under s. 118.15(1)(d).
(c) Evaluated the child to determine whether learning problems may be a cause of the child's truancy and, if so, have taken steps to overcome the learning problems, except that the child need not be evaluated if tests administered to the child within the previous year indicate that the child is performing at his or her grade level.
(d) Conducted an evaluation to determine whether social problems may be a cause of the child's truancy and, if so, have taken appropriate action or made appropriate referrals.
¶ 10 Brandon argues that in order to satisfy the meeting requirement under WIS. STAT. § 118.16(5)(a), the school must provide notice to the parent when the student initially becomes a habitual truant under § 118.16(2)(cg). Subsection (2) provides in part:
(2) The school attendance officer:
. . . .

*533 (cg) Shall notify the parent or guardian of a child who is a habitual truant, by registered or certified mail, when the child initially becomes a habitual truant. The notice shall include all of the following:
. . . .
3. A request that the parent or guardian meet with appropriate school personnel to discuss the child's truancy. The notice shall include the name of the school personnel with whom the parent or guardian should meet, a date, time and place for the meeting and the name, address and telephone number of a person to contact to arrange a different date, time or place. The date for the meeting shall be within 5 school days after the date that the notice is sent, except that with the consent of the child's parent or guardian the date for the meeting may be extended for an additional 5 school days.
Brandon argues that the meeting requirement under § 118.16(5)(a) should be construed as incorporating the notice requirement under para. (2)(cg) because para. (2)(cg) proceeds para. (5)(a). Thus, Brandon contends, the notice requirements under para. (2)(cg) should be viewed as a prerequisite to para. (5)(a). We disagree.
¶ 11 The problem with Brandon's argument is that it is contrary to the plain language of WIS. STAT. §§ 938.13(6) and 118.16(5). See Kalal, 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110. Subsection 938.13(6) specifically requires that the school attendance officer provide evidence that the activities under § 118.16(5) have been completed or were not required due to an exception under subsection (5m). Section 938.13(6) does not state that a JIPS order requires a school attendance officer to provide evidence that all of the requirements under § 118.16 were met. Because the legislature specified that the requirements of § 118.16(5) need to be met to order a juvenile in need of protection or services, we presume that the subsections of § 118.16 that were not listed, including para. (2)(cg), were not intended as requirements to such an order. See FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶ 27, 301 Wis.2d 321, 733 N.W.2d 287 ("Under the doctrine of expressio unius est exclusio alterius, the express mention of one matter excludes other similar matters that are not mentioned."). (Citation omitted.) Significantly, the legislature expressly provided different consequences for violating subsection (5) as opposed to any other subsection. Section 118.16(7) states that "[a]ny school district administrator, principal, teacher or school attendance officer who violates [section 118.16] shall forfeit not less than $5 nor more than $25." While the legislature provided this general deterrent for violating any subsection, it specifically made subsection (5) a requirement of a JIPS order. See WIS. STAT. § 938.13(6). Thus, we conclude that it is contrary to the plain language of the statutes to interpret the notice requirement of § 118.16(2)(cg) as a prerequisite to a JIPS order under § 938.13(6).
¶ 12 Next, Brandon argues that the exception under WIS. STAT. § 118.16(5m) does not apply here, and thus a meeting or attempt to meet were required under para. (5)(a). Subsection (5m) provides, in relevant part: "Subsection (5)(a) does not apply if a meeting under sub. (2)(cg)3. is not held within 10 school days after the date that the notice under sub. (2)(cg) is sent." Brandon argues that the exception cannot apply because sufficient notice of a meeting was not sent under para. (2)(cg) to trigger the exception. HHS responds that sufficient notice was sent, and thus the exception applies. However, we need not resolve this dispute.[5] Because the trial *534 court found that Hougan and Brandon's mother met and discussed Brandon's truancy before the JIPS petition was filed, and this finding is supported by the record, we conclude that the meeting requirement under § 118.16(5)(a) was met, and thus we need not address whether an exception to that requirement applies.[6]
¶ 13 The parties do not directly address whether a meeting took place so as to satisfy the meeting requirement of WIS. STAT. § 118.16(5)(a). Brandon does not assert that a meeting did or did not take place and argues only that the notice requirement for a meeting was not met so as to justify an exception to the requirement of a meeting. HHS states generally that continual meetings took place and argues that the exception to the meeting requirement applies because sufficient notice was sent and Brandon's mother did not respond to the invitation for a meeting. The trial court found that it did not need to resolve whether the § 118.16(2)(cg) notice procedure was met because the school did meet with Brandon's mother to discuss the truancy during the school year and prior to the JIPS petition being filed. Hougan testified that she met with Brandon's mother to discuss the IEP on March 14, 2006, and that she spoke with her on the phone and met with her in person several other times during the year. She stated that she and Brandon's mother specifically addressed Brandon's truancy. Additionally, Hougan testified that during the March 14, 2006 meeting, she and Brandon's mother discussed Brandon's behavior and attendance and discussed resolution through transferring Brandon to a more structured school setting. Brandon's mother testified that she met with Hougan during the school year but did not remember when they met or what they discussed. Thus, the record supports the trial court's finding that Hougan and Brandon's mother met in March 2006 and discussed Brandon's truancy, prior to the filing of the JIPS petition. Based on this factual finding, we conclude that the meeting requirement of WIS. STAT. § 118.16(5)(a) was met.
¶ 14 Brandon next argues that none of the other requirements of Wis. STAT. § 118.16(5) were met. Brandon does not argue that Riverdale failed to present evidence that it performed each of the required activities. Instead, Brandon argues that the evidence Riverdale presented was insufficient to show that it had met the requirements.[7] However, Brandon does not state specifically how the evidence was insufficient, asserting only that "more should have been done" in several categories to assist him before resorting to a JIPS petition. He does not explain what should have been done or how Riverdale's actions fell short of the legal standard under the statutes.[8] Similarly, HHS responds *535 in a cursory fashion that school personnel testified to having performed each activity. Upon our own review of the record, we conclude that the testimony was sufficient to establish that Riverdale performed the required activities under § 118.16(5) before the filing of the JIPS petition.
¶ 15 Under WIS. STAT. § 118.16(5)(b), a school must provide evidence that it "[p]rovided an opportunity for educational counseling to the child to determine whether a change in the child's curriculum would resolve the child's truancy and . . . considered curriculum modifications under s. 118.15(1)(d)."[9] Hougan testified that she met with Brandon to discuss whether a change in his curriculum would resolve his attendance issues, and Brandon indicated that he did not have any issues with his schedule. Bruce Borchardt, the special education teacher at Riverdale, testified that he taught Brandon during the 2005-06 school year. He testified that Brandon's curriculum was modified to reflect the scores on his IEP. Borchardt testified that following a conflict between Brandon and his math teacher, he met with Brandon to discuss the problem, and then Brandon was switched to a computer-based math class. Borchardt also testified that Brandon received special education classes in language arts based on his writing skills. He testified he worked with Brandon for one study hall class period every day. Finally, Hougan testified that she and Brandon's mother decided to transfer Brandon to a different school with a more structured, one-on-one curriculum to try to address Brandon's attendance issues. Thus, Riverdale presented evidence that it provided educational counseling to Brandon and implemented changes in his curriculum *536 to attempt to resolve his attendance problems.
¶ 16 WISCONSIN STAT. § 118.16(5)(c) requires the school to provide evidence that it
[e]valuated the child to determine whether learning problems may be a cause of the child's truancy and, if so, [took] steps to overcome the learning problems, except that the child need not be evaluated if tests administered to the child within the previous year indicate that the child is performing at his or her grade level.
Hougan testified that Brandon was evaluated for his IEP on May 13, 2005, at the school he attended immediately prior to attending Riverdale. She stated that his curriculum was set at Riverdale so that he was taking some courses through special education and some in general education, according to the results from his IEP. She stated that his IEP showed that he was capable of doing the work provided to him. Borchardt testified that he believed that Brandon was capable of doing the work he was given, based on his test scores and Borchardt's observations in working with Brandon. Thus, we conclude that Riverdale provided evidence that it evaluated Brandon to determine whether learning problems were a cause of Brandon's truancy and took steps to overcome those problems.
¶ 17 Finally, under WIS. STAT. § 118.16(5)(d), the school must provide evidence that it "[c]onducted an evaluation to determine whether social problems may be a cause of the child's truancy and, if so, [took] appropriate action or made appropriate referrals." Hougan testified that she conducted an evaluation of Brandon's potential social problems based on a checklist provided by a social service agency. She testified that she perceived Brandon to be social, well liked, and popular. She stated that after he transferred to Riverdale, he made friends easily. She stated that his behavioral problems were with authority figures rather than with other students. Thus, we conclude that Riverdale presented evidence that it evaluated Brandon to determine whether social issues were a cause of his truancy problems. Because the record reveals that Riverdale performed all the required actions under § 118.16(5), we affirm.
Order affirmed.
NOTES
[] Petition for review filed.
[1] Neither party argues that the trial court's findings of fact are clearly erroneous. However, the parties offer slightly varied versions of the events, and each leaves out some facts that we consider significant. To the extent either party spins or omits key facts, we defer to the factual findings of the trial court, which are supported by the record.
[2] WISCONSIN STAT. § 938.13 provides:

 The court has exclusive original jurisdiction over a juvenile alleged to be in need of protection or services which can be ordered by the court if any of the following conditions applies:
. . . .
(6) HABITUALLY TRUANT FROM SCHOOL. . . . [T]he juvenile is habitually truant from school and evidence is provided by the school attendance officer that the activities under s. 118.16(5) have been completed or were not required to be completed as provided in s. 118.16(5m).
All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.
[3] The parties do not dispute this initial construction of the statute. Although they agree that the requirements under WIS. STAT. § 118.16(5) must be met to support a JIPS order, they dispute whether the requirements under § 118.16(5) incorporate a requirement of the notice provision in subsection (2)(cg).
[4] "Habitual truant" is defined as "a pupil who is absent from school without an acceptable excuse under sub. (4) and s. 118.15 for part or all of 5 or more days on which school is held during a school semester." WIS. STAT. § 118.16(1)(a). Brandon does not contest the fact that he meets this definition.
[5] We do not suggest that, absent notice under WIS. STAT. § 118.16(2)(cg), HHS could rely on the exception in § 118.16(5m) to avoid the meeting requirement in § 118.16(5).
[6] The parties spend considerable parts of their briefs arguing over whether the notice requirement of WIS. STAT. § 118.16(2)(cg) is mandatory or directory, whether strict or substantial compliance is required, and whether Riverdale's actions provided the required notice to Brandon's mother. Because we conclude that the notice requirement of § 118.16(2)(cg) is not incorporated into the meeting requirement of para. (5)(a), and that we need not determine whether the exception to the meeting requirement based on para. (2)(cg) notice under subsection (5m) applies, we need not reach their arguments.
[7] The trial court found that all the evidence was met based on testimony of school personnel. Brandon does not argue that any of the testimony was false or that the trial court's adoption of the testimony as factual in support of its conclusion was clearly erroneous. Thus, we rely on the hearing testimony in this portion of our discussion.
[8] Brandon cites D.L.D. v. Circuit Court, 110 Wis.2d 168, 185, 327 N.W.2d 682 (1983), for the proposition that it is the role of school personnel to suggest changes rather than relying on suggestions from the students. However, Brandon does not explain how this holding supports his argument that school personnel did not perform the activities under WIS. STAT. § 118.16(5) in this case. Further, we do not consider D.L.D. persuasive here. D.L.D. was an appeal from a contempt order following violation of a juvenile dispositional order. Id. at 169, 327 N.W.2d 682. There, "the record fail[ed] to reflect any attempt to resolve D.L.D.'s truancy difficulties through the express statutory provisions of sec. 118.16(5), Stats." Id. at 184, 327 N.W.2d 682. Further, the only evidence of exploring alternative dispositions, such as vocational school or full-time employment, was the social worker's testimony that she told D.L.D. that she would explore those options with her if D.L.D. wanted her to. Id. at 184-85, 327 N.W.2d 682. The facts here are sufficiently distinguishable that we decline to address the issue further.
[9] WISCONSIN STAT. § 118.15(1)(d) states:

Any child's parent or guardian, or the child if the parent or guardian is notified, may request the school board, in writing, to provide the child with program or curriculum modifications, including but not limited to:
1. Modifications within the child's current academic program.
2. A school work training or work study program.
3. Enrollment in any alternative public school or program located in the school district in which the child resides.
4. Enrollment in any nonsectarian private school or program, located in the school district in which the child resides, which complies with the requirements of 42 USC 2000d. Enrollment of a child under this subdivision shall be pursuant to a contractual agreement which provides for the payment of the child's tuition by the school district.
5. Homebound study, including nonsectarian correspondence courses or other courses of study approved by the school board or nonsectarian tutoring provided by the school in which the child is enrolled.
6. Enrollment in any public educational program located outside the school district in which the child resides. Enrollment of a child under this subdivision may be pursuant to a contractual agreement between school districts.