935 So.2d 164 (2006)
B & G CRANE SERVICE, L.L.C.
v.
Shannon DUVIC, Bryan Vige, and Turner Bros. Crane & Rigging, Inc.
No. 2005 CA 1798.
Court of Appeal of Louisiana, First Circuit.
May 5, 2006.
Rehearing Denied June 30, 2006.
*165 Thomas P. Hubert, Joseph F. Lavigne, New Orleans, Ryan E. Johnson, Baton Rouge, for PlaintiffAppellant B & G Crane Service, L.L.C.
Charles L. Patin, Jr., Todd A. Rossi, Baton Rouge, for DefendantAppellee Turner Brothers Crane & Rigging, L.L.C.
MacAllynn J. Achee, Baton Rouge, for DefendantAppellee Bryan Vige.
Richard M. Upton, Baton Rouge, for DefendantAppellee Shannon Duvic.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
WELCH, J.
After a thorough review of the record and the applicable law, we find the trial court abused its discretion in denying the plaintiff's Motion for Preliminary Injunction. The trial court's conclusion that there was nothing to enjoin, since the evidence established that the Attorney General's office had seized the misappropriated computer disks and files is clearly unsupported by the record. Our review of the record and applicable law leads to the inescapable conclusion that the plaintiff, B & G Crane Service, Inc. (B & G), is entitled to a preliminary injunction pursuant to Louisiana's Unfair Trade Practices and Consumer Protection Law (LUTPL), La. R.S. 51:1401 et seq. and Louisiana's Unfair Trade Secrets Act, La. R.S. 51:1431 et seq., for the reasons detailed below.

FACTUAL SUMMARY
B & G is in the business of providing crane rentals for construction jobs. Defendant, Turner Bros. Crane and Rigging, Inc. (Turner Bros.) also provides crane rentals for construction jobs and is a direct competitor of B & G. Defendant, Shannon Duvic, is a former employee of B & G. He began his employment with B & G in 1995 and terminated it on November 9, 2004, one day before starting employment with Turner Bros. While Duvic was employed with B & G, B & G paid for his education *166 at LSU until he received an engineering degree. He continued his employment there as an engineer until he resigned in 2004. Duvic's responsibilities included placing bids to certain customers on behalf of B & G in order to secure crane rentals for construction jobs.[1]
On November 16, 2004, two former Turner Bros. employees, Jill and Rickie Gobert provided sworn affidavits detailing misconduct by Duvic in collusion with Turner Bros. and its general manager, Bryan Vige, whereby B & G's confidential bid/quote information, auto-cad drawings and other confidential files were misappropriated and used by Turner Bros. to competitively bid against B & G.
Based on those affidavits, the Louisiana State Attorney General was contacted and subsequently obtained and executed a search warrant for Turner Bros.' Prairieville office. Subject to the warrant, certain items, detailed later herein, were seized. After an investigation, the Attorney General concluded the items and information seized belonged to B & G and had been misappropriated by Duvic. According to the trial court's written reasons for judgment, a bill of information charging Duvic with theft of over $500 and one count of offenses against intellectual property was filed; apparently, that matter is still pending.
Two days after the execution of the search warrant by the Attorney General at Turner Bros.' office in Prairieville, B & G filed this suit seeking monetary damages, a temporary restraining order, a preliminary and permanent injunction and declaratory relief. The trial court issued a TRO, but later denied the plaintiff's Motion for a Preliminary Injunction, finding there was "nothing to enjoin" and dissolved the temporary restraining order. The trial court also granted the defendants' Motion to Strike Plaintiff's claim for treble damages. This appeal by B & G follows.[2]

APPLICABLE LAW
Unfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce are unlawful in Louisiana. La. R.S. 51:1405. Injunctive relief is an available remedy for actual or threatened misappropriation of a trade secret. La. R.S. 51:1432.[3] Trade secret is defined as "information . . . that (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." La. R.S. 51:1431(4). Misappropriation is defined as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use of a trade secret of another without express or implied consent" by a person who uses improper means of acquiring the trade *167 secret information. La. R.S. 51:1431(2). Finally, a breach of fiduciary duty claim based on the misappropriation of confidential information, although not technically a trade secret, is also recognized as grounds for injunctive relief under Louisiana's Unfair Trade Practices Act. La. R.S. 51:1405(A); Defcon, Inc. v. Webb, 28,898 (La.App. 2nd Cir.1/22/97), 687 So.2d 639, 643.
Therefore, the threshold inquiry is whether the information sought to be enjoined is indeed a legally protected trade secret; the second element is whether an express or implied contractual or confidential relationship existed between the parties which obligated the party receiving the secret information not to disclose it; and finally, whether the party receiving the secret information wrongfully disclosed the information to the injury of the plaintiff. Pontchartrain Medical Labs, Inc. v. Roche Biomedical Laboratories, Inc., 95-2260 (La.App. 1st Cir.6/28/96), 677 So.2d 1086, 1090. The elements of a breach of fiduciary duty claim premised on a breach of confidence are similar, except the information need not be a "trade secret." A plaintiff in that case must prove (1) possession by the plaintiff of knowledge or information which is not generally known, (2) communication of this knowledge or information by the plaintiff to the defendant under an express or implied agreement limiting its use or disclosure by the defendant, and (3) use or disclosure by the defendant of the information to the injury of the plaintiff. Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329, 334 (La.App. 1st Cir.1984), writ denied, 467 So.2d 531 (La.1985).
The trial court made no express findings regarding whether the information was either trade secret information or information otherwise cloaked with the requisite confidentiality to prohibit its disclosure; the court simply found there was nothing to enjoin. We have reviewed the entire record and find that the evidence abundantly supports the conclusion that the information at issue in this case can be properly categorized as "trade secret" information. Additionally, the evidence established the information was also confidential by nature and content; efforts were made by the plaintiff to maintain and protect its confidentiality; the confidential nature of the information was expressly known to Duvic; and, Duvic had been expressly prohibited from disclosing the information to anyone, specifically the defendants for whom he was going to work.
As noted by the trial court in its written reasons for judgment, the information at issue "includes, but is not limited to, a computer disk, copies of hundreds of rolodex cards belonging to B & G, the memory chip out of the Nextel telephone which belongs to B & G and which Duvic used to download all of the phone numbers from the memory chip, B & G's auto-cad drawings, and confidential bidding and pricing information." The following evidence in the record supports a finding that the information at issue was confidential and subject to protection by law.
The affidavit of Xavier Grilletta, CEO of B & G, provides that the general practice in the construction industry is that contractor's bids are submitted under seal and not disclosed to other contractors bidding on the project, and are submitted with the expectation that they will remain private and closed. He also detailed the process of compiling information that is gathered and considered in submitting a bid and attested that it is generally known in the industry that a contractor's bid/quote information is very valuable, and if disclosed, would give a competitor a substantial advantage in the bidding process. He described this information as "akin to *168 having a football team's entire playbook before a game begins, as opposed to knowing isolated plays that a team may run." Plaintiff corroborated this testimony with the affidavit of Rickie D. Gobert, an employee in the construction industry for over twenty years, who also stated that it is general knowledge in the industry that a company's pricing and cost structures in preparing bids is confidential and proprietary in nature and cannot be ascertained through public sources. He attested that he was employed for Turner Bros. and he regularly overheard Shannon Duvic discussing B & G's confidential bid information with Turner Bros.'s sales manager, Bryan Vige. He also stated that prior to being employed by Turner Bros., Duvic visited Turner's Prairieville office on a "regular basis." These attestations were uncontradicted.
Grilletta also attested to the precautions B & G took to limit access to the information even within B & G. A firewall was installed on the company's computer network server, which allowed access to the bidding information only to employees involved in the bidding process. Additionally, B & G sales people, including specifically Duvic, were personally advised that the information was confidential and should not be disclosed to anyone outside of the B & G bidding process. Again, these attestations were uncontradicted.
Grilletta also detailed the extensive auto-cad library maintained by B & G and the lengthy process through which they hired engineers to create the drawings from scratch and to "re-block" manufacturer's drawings in formats useful to B & G. The B & G auto-cad software is licensed and access is limited to authorized employees, one of which was Duvic. B & G's auto-cad drawings, one of which was attached as an exhibit, are marked "CONFIDENTIAL AND FOR REFERENCE ONLY." Hence, he attested that the customized drawings had great economic value to B & G and would be of enormous benefit if wrongfully disclosed to competitors. Turner Bros. attempted to contradict this testimony, but our review of those affidavits leads to the conclusion that this evidence was insufficient to overcome the showing of confidentiality of B & G's custom auto-cad library.
Finally, Grilletta stated that he had reviewed the information seized from Turner Bros.'s Prairieville office and that it included computer disks containing all of B & G's confidential bid/quote information, as well as auto-cad drawings, which indicated they had been downloaded by Duvic at B & G's office after hoursone was at 9:00 p.m., the other at 12:30 a.m. Grilletta even reviewed some of his own personal files containing confidential and proprietary information, which Duvic was prohibited from accessing and which were protected by a firewall to prevent such unauthorized access. Therefore, Duvic had to obtain Grilletta's password and use it without authorization to have been in possession of those files. This testimony was corroborated by that of Brad Truby, B & G's computer systems administrator, who attested to the limited access to the confidential files and the breach of that access by Duvic in obtaining Grilletta's personal files. Again, this testimony was uncontradicted.
In summary, the uncontradicted evidence established that, while under the employ of B & G, Duvic, in collusion with Vige and Turner Bros., wrongfully misappropriated B & G's confidential pricing and bid/quote information and autocad drawings by downloading from B & G's computers without authorization, terminated his employment with B & G and immediately, employed by Turner Bros., began unlawfully *169 using that information to compete with B & G in attempt to win bids.
The uncontradicted evidence also established that the Attorney General's investigators seized at least some of the misappropriated information in response to a search warrant executed at Turner Bros.'s Prairieville office.[4] Subsequently, as reflected in the trial court's written reasons for judgment, the Attorney General charged Duvic with one count of theft over $500 and one count of offenses against intellectual property.
Notably, our review of the record also reveals the very significant and complete absence of evidence, by affidavit, pleading or otherwise by the defendants denying any of the foregoing. Notwithstanding the plaintiff's clear evidence that the defendants wrongfully possessed and used the misappropriated information, and without denying continued possession, the defendants assert that the plaintiff is not entitled to injunctive relief simply because it failed to prove that any of the defendants remained in possession of the misappropriated information subsequent to the execution of the Attorney General's search warrant; therefore, there is no "present need" for injunctive relief.
We believe that the need for continued injunctive relief is clear from the record, notwithstanding the absence of any direct evidence that the defendants are presently in possession of the information. The record establishes that the defendants knowingly and willingly engaged in criminal, unethical and unscrupulous acts in attempts to use B & G's confidential trade information and bid competitively against it. Given the foregoing, and the fact that the conduct continued until the defendants were "caught red-handed," to the extent that the trial court believed the defendants' attorney's assertions that the defendants' no longer possess the information, such a credibility determination in favor of the defendants is an abuse of discretion under the circumstances presented. Not only was the evidence regarding the current computer content at Turner Bros.'s Prairieville office inconclusive, it also wholly fails to foreclose the possibility that the disks could have been downloaded to computers at other locations. Moreover, it is a matter of common knowledge and simple logic that the information which the defendants admit (after being caught) possessing, could have easily been reproduced and maintained by various methods: it could have been downloaded onto computers at other Turner Bros. locations or it could have been printed and photocopied and kept in files at locations other than Turner Bros.'s Prairieville office. It could even have been handwritten and kept simply anywhere. The evidence of defendants' past conduct certainly supports any of these or even other possibilities.
Given the unique circumstances of this case and the evidence presented, we find that even without direct evidence that the defendants continue to possess the actual computer disks and information seized by the Attorney General, the plaintiff has sufficiently established the requisite need for and entitlement to a preliminary injunction. See Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329 (La. *170 App. 1st Cir.1984), writ denied, 467 So.2d 531 (La.1985); Konecranes, Inc. v. Robaina, 2000 WL 41208 (E.D.La.). Accordingly, the trial court abused its discretion in denying the plaintiff's request for such and in dissolving the temporary restraining order, and that portion of the judgment is reversed. This matter is hereby remanded to the trial court for the entry of a preliminary injunction and further proceedings consistent herewith.

MOTION TO STRIKE TREBLE DAMAGES CLAIM
However, we find no error in the trial court's granting the defendants' Motion to Strike Claim for Treble Damages. Although treble damages are awardable under Louisiana's Unfair Trade Practices and Consumer Protection Law (LUTPL), La. R.S. 51:1409(A), the claim is defeated unless plaintiff can prove that they properly served the Director of Governor's Consumer Protection Division or the Attorney General, and that the defendants were given the requisite notice that any continued use and/or disclosure of the allegedly misappropriated information would subject them to a claim for treble damages. B & G does not deny that it failed to serve the Director or the Attorney General with a copy of its petition as required by the statute, but argues instead that it did not think it had to, since the defendants were already on "notice" by the Attorney General's issuance and execution of the search warrant in conjunction with its criminal investigation of the matter. However, the notice required under § 1409(A) is issued under civil, not criminal, jurisdiction, and serves the specific purpose of a "cease and desist" notice to the defendants that they may be subject civilly to a treble damage claim. This is not the same notice the defendants in this case had. Moreover, the award of treble damages is punitive in nature and must be strictly construed. Therefore, since the plaintiff has been unable to prove the issuance of the requisite notice to the defendants mandated by statute, the trial court did not err in granting the defendants' motion to strike the claim for treble damages.
For the foregoing reasons, the portion of the May 12, 2005 judgment of the trial court denying the plaintiff's Motion for Preliminary Injunction is reversed; the portion of the judgment of the trial court granting the defendants' Motion to Strike the claim for treble damages is affirmed; and this matter is remanded for the issuance of a preliminary injunction and further proceedings consistent herewith. Costs of this appeal are assessed to the defendants.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.
McCLENDON, J., agrees in part and dissents in part and assigns reasons.
McCLENDON, J., agrees in part and dissents in part.
Although I agree with the majority reversing that portion of the trial court's judgment regarding injunctive relief, I disagree with the majority's affirmance of that portion of the judgment granting the motion to strike treble damages. Under the facts of this case, I am of the opinion that the better procedure regarding treble damages or punitive damages is set forth by Justice Lemmon in his concurring opinion in Ciecierski v. Avondale Shipyards, Inc., 574 So.2d 1256 (La.1991), wherein he stated:
The issue of the right to recover punitive damages, as one of several items of damages demanded in the petition, generally should not be raised by an exception of no cause of action (or by motion to strike), because a pretrial ruling on *171 the issue frequently results in piecemeal appeals and unwarranted delays (as occurred in this case). The preferable procedure would have been for the trial court [to] overrule the exception and later, at the trial on the merits, to exclude evidence of punitive damages, allowing [plaintiff] to present the evidence by means of a proffer so that in any subsequent appeal all issues could be presented at one time. (Citation and footnote omitted.)
Therefore, I respectfully dissent in part.
NOTES
[1] Also named as a defendant was Bryan Vige. Vige and Duvic have invoked the Fifth Amendment protection against self-incrimination throughout this litigation, having refused to be deposed and not filing any response pleadings. However, both of these defendants have appeared as appellees in this appeal, and have filed motions to adopt co-appellees brief, which were granted by this court.
[2] Turner Bros. filed an answer to the appeal seeking damages for the dissolution of the temporary restraining order. However, given our conclusion in this appeal that the trial court erred in denying the plaintiff's motion for a preliminary injunction, defendants' answer is moot.
[3] The existence of trade secrets is also recognized in La. C.C.P. art. 1426(7).
[4] The specific items seized were:

HP Compaq DX2000MT SN:MXD4110921 Bag of 6 various CDs in jewel cases 171 floppy disks and 2 CD-Rs in Fellowes floppy case
Box of Misc. files pertaining to B & G Crane
Large Box of Misc. files and binders pertaining to B & G Crane
Box of Misc. files pertaining to B & G Crane
One CD-R and one floppy disk found in suspect[']s computer