VILLAGE OF HOBART,
Plaintiff-Appellant,

v.

ONEIDA TRIBE OF INDIANS OF WISCONSIN,
Amy L. Kocha, LaVerne Bochek-Robbins and
Wisconsin Central Ltd., Defendants-Respondents.

Court of Appeals

*No. 2006AP2639. Submitted on briefs June 5, 2007.
—Decided June 22, 2007.*

2007 WI App 180

(Also reported in 736 N.W.2d 896.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy M. Barber* and *William S. Woodward* of *Hanaway Ross, S.C.*, Green Bay.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James R. Bittorf* and *Rebecca M. Webster* of *Oneida Law Office*, Oneida.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. The Village of Hobart appeals an order dismissing its suit for a declaration of interests in a railroad right-of-way. The circuit court concluded the Village does not have an "interest in real property" in the right-of-way, and so cannot maintain an action under Wis. Stat. ch. 841.[1] The Village contends its regulatory power to condemn, assess, tax, and zone property within its boundaries is a qualifying "interest" in that property. We disagree and affirm the order.

## BACKGROUND

¶ 2. The railroad right-of-way in question here runs through the Village, following Riverdale Drive from County Line Road to the Green Bay city line. Prior to 2003, the right-of-way was a working railroad track operated by Wisconsin Central Ltd.'s predecessors. In 2003, Wisconsin Central's immediate predecessor, Fox Valley & Western Ltd., agreed to abandon the right-of-way pursuant to an agreement with the Oneida Tribe. As part of the agreement, Fox Valley & Western quit-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

claimed its interest in the right-of-way to the Oneida Tribe. Apparently, no title to the right-of-way has been recorded at any point after an 1870 agreement allowing construction of the railroad line.

¶ 3. The Village filed this action on March 8, 2006, asking for a declaration of all interests in the right-of-way under WIS. STAT. ch. 841. The Village named the Tribe, Fox Valley & Western, and unknown individuals as defendants.[2] The Tribe moved to dismiss the complaint asserting, among other things, that the Village had failed to state a claim under ch. 841 because it did not have an "interest in real property" as defined in WIS. STAT. § 840.01. The circuit court agreed and dismissed the action.

### DISCUSSION

¶ 4. Whether a complaint states a claim on which relief can be granted is a question of law reviewed without deference to the circuit court. *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 19, 284 Wis. 2d 307, 700 N.W.2d 180. The meaning of a statute is also a question of law reviewed without deference. *LaCount v. General Cas. Co.*, 2006 WI 14, ¶ 20, 288 Wis. 2d 358, 709 N.W.2d 418.

---

[2] Two individuals, Amy Kocha and LaVerne Bochek-Robbins, later appeared in the action. Kocha and Bochek-Robbins have interests in land adjacent to the right-of-way. They did not take any position on the Village's motion to dismiss. The parties stipulated to substitution of Wisconsin Central for Fox Valley & Western. Wisconsin Central then filed an answer in which it stated it had no interest in the right-of-way and asked to be dismissed from the action.

¶ 5. When interpreting statutes, we begin with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. That language is given its common, ordinary, and accepted meaning. *Id.* We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a way that avoids absurd results. *See id.*, ¶ 46. We also consider the purpose of the statute so far as its purpose is shown in the text and structure of the statute itself. *Id.*, ¶ 48.

¶ 6. WISCONSIN STAT. § 841.01(1) provides that "[a]ny person claiming an interest in real property may maintain an action against any person claiming a conflicting interest, and may demand a declaration of interests." An "interest in real property" is defined as follows:

> (1) Except as provided in sub. (2), "interest in real property" includes estates in, powers under ch. 702 over, present and future rights to, title to, and interests in real property, including, without limitation by enumeration, security interests and liens on land, easements, profits, rights of appointees under powers, rights under covenants running with the land, powers of termination and homestead rights. The interest may be an interest that was formerly designated legal or equitable. The interest may be surface, subsurface, suprasurface, riparian or littoral.
>
> (2) "Interest in real property" does not include interests held only as a member of the public nor does it include licenses.

WIS. STAT. § 840.01.

765

¶ 7. The Tribe argues the term "interest in real property" includes only property rights, not the Village's regulatory power to condemn, tax, zone, and assess property within its boundaries. We agree, for three reasons.

¶ 8. First, the Tribe's interpretation is the only interpretation consistent with the language of WIS. STAT. § 840.01. The Village concedes its regulatory powers are not an "estate in" land within its jurisdiction. WIS. STAT. § 840.01(1). It does not contend—nor could it—that its regulatory powers are a power under WIS. STAT. ch. 702,[3] a present or future right to the land, or a form of title to the land. *See id.*

¶ 9. The Village relies on the list of enumerated property interests in WIS. STAT. § 840.01(1). All of the enumerated interests, however, are property rights.[4] For example, an easement is "an interest in land owned by another person." BLACK'S LAW DICTIONARY 548 (8th ed. 2004). A "homestead," as relevant here, is "a surviving spouse's right of occupying the family home for life." *Id.* at 751. The terms "security interest," "lien," "profit," and "covenant" also refer to property rights, not regulatory powers belonging to governmental entities.[5] *Id.* at 393,

[3] WISCONSIN STAT. ch. 702 governs powers of appointment, an estate planning device. *See* WIS. STAT. § 702.01(4).

[4] The Village characterizes the issue as whether the enumerated interests are "ownership interests" and contends that some of the enumerated interests in WIS. STAT. § 840.01(1) are powers over property, not ownership interests. The Village misstates the issue. The salient distinction in § 840.01 is between property rights and regulatory powers, not ownership interests and all other interests.

[5] BLACK'S LAW DICTIONARY does not define "rights of appointees under powers" or "powers of termination." "Rights of

941, 1247, 1387. When a statute defines a term by providing a non-exclusive list of items that meet the definition, we interpret the term as including only items that are of the same type as the listed items. *Adams Outdoor Adver., Ltd. v. City of Madison*, 2006 WI 104, ¶ 62 n.15, 294 Wis. 2d 441, 717 N.W.2d 803. Here, the enumerated items are all property rights. None are regulatory powers belonging to governmental entities.

¶ 10. In addition, the two sentences following the listed rights define "interest in land" as including interests regardless of whether they were "formerly designated legal or equitable" or whether they are "surface, subsurface, suprasurface, riparian or littoral." WIS. STAT. § 840.01(1). These terms refer to different types of property rights, not regulatory powers belonging to governmental entities. *See* BLACK's, *supra,* at 952, 1352, 1471, 1483.

¶ 11. Second, the Tribe's interpretation is consistent with the way the term "interest in real property" is used in WIS. STAT. ch. 841. WISCONSIN STAT. § 841.02 requires plaintiffs in an action under ch. 841 to describe "the interest of the plaintiff and how the plaintiff acquired that interest" in the complaint. The plaintiff must also name "the interest of each person claiming an interest known to be adverse to the plaintiff." *Id.* Similarly, a defendant must note "the nature and derivation" of its interest in the answer. WIS. STAT. § 841.04. These pleading requirements make little sense when applied to governmental entities; taken literally, they

appointees" appears to be a reference to WIS. STAT. ch. 702. A "power of termination" is a right to terminate another person's property interest if that person fails to meet agreed upon conditions. *See* RESTATEMENT (FIRST) OF PROPERTY § 24, comment b (1936). The Village does not argue that either is a regulatory power.

would require the entity to explain that the nature of its interest is regulatory and it acquired that interest by virtue of the Wisconsin Statutes and the Constitution. In the case of competing property rights, however, these requirements facilitate an exchange of useful information that helps litigants evaluate adverse claims.

¶ 12. Finally, the Tribe's interpretation is consistent with the history and purpose of WIS. STAT. § 840.01. Actions for a declaration of interests were formerly known as quiet title actions. Under the oldest quiet title statutes, quiet title actions could be brought only by plaintiffs who had both possession and legal title to the land. *See Pier v. City of Fond du Lac*, 38 Wis. 470, 479 (1875). By 1919, only legal title was required to bring an action. WIS. STAT. § 3186 (1919). In 1919, the legislature amended § 3186 to specifically provide that "the owner and holder of any lien or incumbrance on land, shall have the same right of action as the owner in fee" to bring an action against other claimants. 1919 Wis. Laws ch. 148. In 1973 the legislature amended the statute to include the definition that, with a few minor alterations, remains in effect today. 1973 Wis. Laws ch. 189. This history of § 840.01 shows a pattern toward allowing a single action to determine all property rights to a given parcel, regardless of the type of property right involved. It does not, however, show any intent to allow suits by other persons or entities without a property right, such as municipalities or neighbors.

¶ 13. The Village makes two arguments in response. First, the Village argues WIS. STAT. § 840.01(2) supports its interpretation. That section provides that "interest in real property" does not include "interests held only as a member of the public." The Village argues this is the only restriction on the definition of "interest." However, if the legislature intended sub. (2) to be the

only restriction on the term "interest in real property," it could simply have stated that "interest in real property" includes all asserted rights relating to real property except interests held only as a member of the public. Instead, the legislature defined "interest in real property" in a more restrictive way. We will not interpret § 840.01(2) in a way that would effectively remove sub. (1) from the books. *See Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 14. We also note that, if anything, Wis. Stat. § 840.01(2) supports the Tribe's interpretation. Subsection (2) forecloses the possibility that a person may have a qualifying interest in publicly held land by virtue of his or her status as a citizen. This is a type of property right, based on the theory that property owned by the government is in fact owned by the people. Subsection (2) therefore places an outer limit on the broad concept of property rights set out in sub. (1), and is yet another indication that property rights—not governmental regulatory powers—are the "interest in land" contemplated by Wis. Stat. § 840.01.

¶ 15. Finally, the Village contends a quiet title action is necessary for it to exercise its regulatory powers over the right-of-way. The Village notes that its power to tax and condemn the right-of-way depends on who owns it and, in the case of the Tribe, the form of title the Tribe holds in the right-of-way.[6] The Tribe, however, points out that the Village is fully able to

---

[6] The ultimate issue in dispute between the parties is the Village's power to tax, assess, and condemn the right-of-way. If the right-of-way is property held by the United States in trust for the Tribe, the Village has limited authority to tax it pursuant to an agreement between it and the Tribe. If the right-of-way is held in fee, the Village apparently has a broader power to tax, assess and condemn it.

determine the scope of its regulatory powers by other means. The Tribe contends the right-of-way is trust property, and the Village's power to tax and assess it is governed by an agreement between it and the Village. The Tribe notes that if the Village believes otherwise, nothing prevents it from assessing whatever amount it believes is appropriate, then resolving the right-of-way's title status in a suit to collect the assessment if the Tribe objects. The Village could use the same procedure if it wishes to condemn all or part of the right-of way. The Village does not explain why these procedures are unavailable, and we likewise fail to see why the Village insists on resolving the issue through an action for a declaration of interests.

*By the Court.*—Order affirmed.