*547 REBECCA GRASSL BRADLEY, J.
(■dissenting).
¶ 128. The circuit court's dismissal of North Highland, Inc.'s complaint against Frederick Wells reflects an improperly narrow conception of what constitutes a "trade secret" as well as a misapplication of the doctrine of claim preclusion.[1] Because I conclude that a confidential bid can be a trade secret and that an adversary action in Dwain Trewyn's federal bankruptcy proceedings does not necessarily preclude North Highland's claims against Wells in state court, I would reverse the decision of the court of appeals and therefore respectfully dissent. Additionally, I would remand to the circuit court for a jury trial; material factual disputes remain on North Highland's trade *548 secret misappropriation claim,[2] and the circuit court should restore its earlier ruling that North Highland's claims against Wells for civil conspiracy to breach a fiduciary duty, aiding and abetting breach of fiduciary duty, and interference with contract survive a motion for summary judgment.
i—i
A
¶ 129. Historically, Wisconsin has held that "[w]hether a trade secret exists is a mixed question of fact and law. Once the historical facts are found by the circuit court, whether those facts meet the legal standard is a question of law which we review without deference to the circuit court's decision." B.C. Ziegler & Co. v. Ehren, 141 Wis. 2d 19, 26, 414 N.W.2d 48 (Ct. App. 1987) (citation omitted) (citing Corroon & Black-Rutters & Roberts, Inc. v. Hosch, 109 Wis. 2d 290, 294, 325 N.W.2d 883 (1982)). Notwithstanding Wisconsin's adoption of a version of the Uniform Trade Secrets Act (UTSA), I would not cast this standard aside.
¶ 130. In Minuteman, Inc. v. Alexander, 147 Wis. 2d 842, 434 N.W.2d 773 (1989), this court properly acknowledged that when the legislature adopted the UTSA, it replaced the common law definition of "trade secret" with the statutory definition in Wis. Stat § 134.90(1)(c). Minuteman, 147 Wis. 2d at 851-52. Accordingly, the six-factor test from Corroon & Black-Rutters & Roberts, Inc. v. Hosch, 109 Wis. 2d 290, 325 *549 N.W.2d 883 (1982), no longer set the standard for determining the existence of a trade secret, although the test continues to offer "helpful guidance in deciding whether certain materials are trade secrets" under the statute. Minuteman, 147 Wis. 2d at 851-53.
f 131. The Minuteman court, however, did not discuss whether the statutory abrogation of the common law definition of "trade secret" had a similar impact on the standard of review in trade secret cases. Instead, the Minuteman court set forth a standard of review before discussing Wis. Stat. § 134.90:
The construction of a statute or the application of a statute to a particular set of facts is a question of law. Bucyrus-Erie Co. v. ILHR Dep't., 90 Wis. 2d 408, 417, 280 N.W.2d 142 (1979). This court decides questions of law without deference to the circuit court's determination. Ball v. Dist. No. 4, Area Bd. of Vocational, Technical & Adult Education, 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). This court, however, accepts the circuit court's findings of fact unless they are clearly erroneous. Section 805.17(2), Stats.
Minuteman, 147 Wis. 2d at 853. Although the Minuteman court did not specifically identify the "mixed" standard of review derived from Corroon & Black, its statement of separate standards for statutory interpretation, on the one hand, and circuit court findings of fact, on the other, suggests an implicit acknowledgement of the mixed nature of the questions raised in trade secret cases.
¶ 132. Among state and federal courts interpreting various enactments of the UTS A, the majority of jurisdictions characterize the existence of a trade secret as a "question of fact." See, e.g., Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 723 (7th Cir. 2003) ("The existence of a trade secret ordinarily is *550 a question of fact."); Ovation Plumbing, Inc. v. Furton, 33 P.3d 1221, 1224 (Colo. App. 2001) ("What constitutes a trade secret is a question of fact."); see also 1 Melvin F. Jager, Trade Secrets Law § 5.2, at 5-4 (2016) ("In the view of the majority, the existence of a trade secret is considered to be a 'question of fact.1"). But the reasons for treating the existence of a trade secret as purely a question of fact are not clear. The Fifth Circuit has suggested that because "[t]he term 'trade secret' is one of the most elusive and difficult concepts in the law to define" the question therefore "is of the type normally resolved by a fact finder after full presentation of evidence from each side." Lear Siegler, Inc. v. Ark-Ell Springs, Inc., 569 F.2d 286, 288-89 (5th Cir. 1978). Other jurisdictions seem to repeat the standard with a quotation or citation but no analysis, and following those citations to the principle's source reveals nothing more than an ostensible truism—also devoid of analysis.[3]
*551 ¶ 133. Wisconsin's mixed standard of review in trade secret cases therefore represents the minority approach. 1 Jager, supra, § 5.2, at 5-6 to 5-7. Nevertheless, the legislature's 1986 adoption of the UTSA in no way necessitates rejection of our standard of review in the same way it required us to acknowledge the abrogation of the common law definition of "trade secret." Indeed, the existence of a statutory definition of "trade secret" suggests that Wisconsin should retain its more nuanced standard. As the Minuteman court recognized when it first interpreted Wis. Stat. § 134.90, the construction of a statute and its application to historical facts presents a question of law for appellate courts to review independently. Minuteman, 147 Wis. 2d at 853; see also World Wide Prosthetic Supply, Inc. v. Mikulsky, 2001 WI App 133, ¶ 10, 246 Wis. 2d 461, 631 N.W.2d 253 ("Resolution of this appeal requires interpretation of Wis. Stat. § 134.90(4), a question of law we review de novo."). Trade secret cases no doubt turn on subtle questions of fact, such as, "Did the information derive independent economic value from its nondisclosure? Was the information subject to reasonable efforts to maintain its secrecy?" But no less than any other statute, it is the court's responsibility to say what § 134.90 means—as the question raised by North Highland in this case illustrates.[4]
*552 B
¶ 134. North Highland argues that the circuit court and court of appeals erred by failing to conclude that a confidential bid may satisfy the definition of "trade secret" in Wis. Stat. § 134.90. Because the plain language of § 134.90 supports North Highland's broad interpretation of "trade secret," I would reverse the decision of the court of appeals and remand for the circuit court to consider North Highland's trade secret misappropriation claim under the proper standard of law.
¶ 135. Assessment of Wis. Stat. § 134.90 begins with its text. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶¶ 44-51, 271 Wis. 2d 633, 681 N.W.2d 110. Section 134.90(1). defines "trade secret" as follows:
(c) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:
1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.
*553 North Highland's claim therefore turns on whether a confidential bid constitutes "information" within the meaning of this section. To answer that question, I consider the plain meaning of the word "information," as well as the effect, if any, of the "including" clause that follows it in paragraph (c).
¶ 136. Dictionary definitions of "information" suggest that the term encompasses a broad class of knowledge. See Information, The American Heritage Dictionary of the English Language 901 (5th ed. 2011) ("Knowledge or facts learned, especially about a certain subject or event."); Information, Webster's Third New International Dictionary 1160 (1986) ("knowledge of a particular event or situation"; "facts or figures ready for communication or use"). These definitions indicate that "information" consists of facts, figures, or general knowledge regarding a particular subject matter and capable of practical application or use. Given the breadth of the term's scope, a business might possess any number of pieces of "information" that it wishes to protect, and a confidential bid price certainly consists of a figure that a business develops and communicates for the practical purpose of securing a contract.
¶ 137. Despite the broad reach of the term "information," Wells points to the remainder of the definition of "trade secret": "information, including a formula, pattern, compilation, program, device, method, technique or process." Wis. Stat. § 134.90(1)(c) (emphasis added). Wells argues that State v. Popenhagen, 2008 WI 55, 309 Wis. 2d 601, 749 N.W.2d 611, and Village of Hobart v. Oneida Tribe of Indians of Wisconsin, 2007 WI App 180, 303 Wis. 2d 761, 736 N.W.2d 896, hold that when a list introduced by "including" follows a general term, the list limits the scope of the *554 general term to items similar in nature to those listed. Popenhagen, 309 Wis. 2d 601, ¶¶ 46-48; Oneida Tribe, 303 Wis. 2d 761, ¶ 9. The ejusdem generis canon of statutory construction discussed in those cases, however, does not invert the plain meaning of the term "including" in Wis. Stat. § 134.90 because the canon "has traditionally required the broad catchall language to follow the list of specifics." Antonin Scalia & Bryan A. Garner, Reading Law 202 (2012). Rather, "[following the general term with specifics . . . mak[es] doubly sure that the broad (and intended-to-be-broad) general term . . . include[s] the specifics," meaning the "including" phrase serves a "belt-and-suspenders function" in the statutory text. Id. at 204. This construction of "including" also comports with the canon that presumes the use of "including" does not create an exhaustive list but merely an exemplary one. Id. at 132-33. Accordingly, formulas, patterns, compilations, programs, devices, methods,'techniques, and processes are not the only types of "information" that may satisfy the definition of "trade secret" in Wis. Stat. § 134.90(1).
¶ 138. The plain language of Wis. Stat. § 134.90(1) also defeats Wells's argument that the definition of "trade secret" includes a "continuous use" requirement. Wisconsin courts defining "trade secret" at common law held that "[a] trade secret is a process or device which is continually used in the operation of the business and thereby differs from secret information which may refer only to an isolated transaction." Wis. Elec. Power Co. v. Pub. Serv. Comm'n, 106 Wis. 2d 142, 148, 316 N.W.2d 120 (Ct. App. 1981) (internal quotation mark omitted) (quoting Future Plastics, Inc. v. Ware Shoals Plastics, Inc., 340 F. Supp. 1376, 1383 (D.S.C. 1972)). The court of appeals even went so far as to observe that a trade secret "differs from other secret *555 information in a business ... in that it is not simply information as to single or ephemeral events in the conduct of the business, as, for example, the amount or other terms of a secret bid for a contract." Id. (alteration in original) (quoting Restatement (First) of Torts § 757 cmt. b (1939)). As already noted, the 1986 adoption of the UTSA abrogated the more restrictive common law definition of "trade secret." Minuteman, 147 Wis. 2d at 851-52. Because the language in Wis. Stat. § 134.90(1) does not include a continuous use requirement in the definition of "trade secret," it should not be judicially imposed here.[5]
f 139. Wisconsin Stat. § 134.90(7) also commands courts to apply and interpret § 134.90 in a manner that will "make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws." Refusing to graft a renewed "continuous use" requirement onto the definition of "trade secret" aligns with other jurisdictions, which already protect some types of business information as trade secrets, even if used only for a short period of time—or just once, in the case of a confidential bid. See, e.g., Economy Roofing & Insulating Co. v. Zumaris, 538 N.W.2d 641, 646-47 (Iowa 1995) (holding that complaint alleging misappropriation of "bid information" and "bid estimates" properly stated claim because "information" included "such [business] mat *556 ters as maintenance of data on customer lists and needs, source of supplies, confidential costs, price data and figures" (emphasis omitted) (quoting US West Commc'ns, Inc. v. Office of Consumer Advocate, 498 N.W.2d 711, 714 (Iowa 1993))); B & G Crane Serv., L.L.C. v. Duvic, 2005-1798, p. 7-8 (La. App. 1 Cir. 5/5/06), 935 So. 2d 164, 168-69 ("[W]hile under the employ of [plaintiff], [defendant] . . . wrongfully misappropriated [plaintiffs] confidential pricing and bid/quote information . . ., terminated his employment with [plaintiff] and immediately . . . began unlawfully using that information to compete with [plaintiff] in attempt to win bids."); USA Power, LLC v. PacifiCorp, 2016 UT 20, ¶ 69, 372 P.3d 629 ("It can hardly be argued that, in a bidding contest, for one competitor to have access to another competitor's internal financial calculations—calculations that will certainly bear upon that competitor's ultimate bid—would have obvious value. Such financial information is a paradigmatic example of a trade secret."); cf. Ovation Plumbing, 33 P.3d at 1224 ("declining] to adopt a per se rule that a bid on a contract cannot be a trade secret as a matter of law").
f 140. Categorically excluding confidential bids from trade secret protection contradicts the legislature's decision to bring all "information" within the definition of "trade secret," provided the other statutory parameters are met:
Almost any subject matter may be a trade secret, including a secret formula or process, computer software, digital databases, the passcode for a website, biotechnology, mechanical configurations, information relating to the finding and extraction of oil and gas, plans, layouts and design drawings, recipes, boat hull molds, customer lists, instructional materials, internal *557 business practices, manufacturing cost data, sales histories and forecasts, materials and plans for advertising, marketing, and distribution, and membership and employee information. Even religious material is eligible for trade secret protection.
3 Louis Altman & Malla Pollack, Callmann on Unfair Competition, Trademarks and Monopolies § 14:14, at 160 (4th ed. 2016) (footnotes omitted). Applying "information" to a broad spectrum of facts, figures, and knowledge, does not, however, infinitely expand the scope of trade secret protection. After all, any individual piece of "information" satisfies the definition of "trade secret" only if it also meets the independent economic value and secrecy requirements in Wis. Stat. § 134.90(1)(c)1 and 2.
¶ 141. In this case, the parties focused their arguments on the threshold question of whether a confidential bid can be "information." Because I conclude, as a matter of law, that a confidential bid certainly constitutes "information" within the meaning of Wis. Stat. § 134.90,1 would reverse the decision granting summary judgment to Wells on North Highland's trade secret misappropriation claim, and I would remand the matter to the circuit court for a jury trial on the remaining factual issues, including whether North Highland took reasonable measures to maintain the bid's secrecy and whether Wells misappropriated North Highland's bid.
HH I—I
¶ 142. The circuit court also ruled that claim preclusion barred North Highland's claims against Wells. I disagree. Courts apply the doctrine of claim preclusion to prevent "vexatious, repetitious and needless claim[s]" between the same parties on the same *558 causes of action when another court has previously entered a final judgment on the merits. See N. States Power Co. v. Bugher, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995) (quoting Purter v. Heckler, 771 F.2d 682, 690 (3d Cir. 1985)). Claim preclusion promotes finality in litigation and prevents a party from repeatedly filing the same cause of action against the same defendant where that lawsuit has already resulted in "a final judgment on the merits in a court of competent jurisdiction." Id. at 551. "Key objectives of the doctrine of claim preclusion are to promote judicial economy and to 'conserve the resources the parties would expend in repeated and needless litigation of issues that were, or that might have been resolved in a single prior action.1 " Mrozek v. Intra Fin. Corp., 2005 WI 73, ¶ 28, 281 Wis. 2d 448, 699 N.W.2d 54 (quoting Hanlon v. Town of Milton, 2000 WI 61, ¶ 20, 235 Wis. 2d 597, 612 N.W.2d 44). "The question of whether claim preclusion applies under a given factual scenario is a question of law that this court reviews de novo." Wis. Pub. Serv. Corp. v. Arby Constr., Inc., 2012 WI 87, ¶ 30, 342 Wis. 2d 544, 818 N.W.2d 863 (quoting N. States Power Co., 189 Wis. 2d at 551).
¶ 143. The factual scenario presented here involves not only North Highland's state court claims against Trewyn, Jefferson Machine & Tool Inc., and Wells but also a separate adversary proceeding by North Highland against Trewyn in federal bankruptcy court challenging the dischargeability of Trewyn's debt to North Highland. Ultimately, North Highland settled the dischargeability issue in bankruptcy court on its merits. Shortly after the settlement in that adversary proceeding, North Highland and Trewyn entered a stipulation in the state court case dismissing Trewyn alone but reserving North Highland's claims against *559 Wells. Pursuant to this stipulation, the circuit court dismissed Trewyn from the case, ordering that the "matter shall proceed as between all remaining parties." None of the stipulations or orders dismissing Trewyn from the state or federal court proceedings affected claims against Wells; rather, those claims were expressly reserved. None of the stipulations or orders adjudicated the merits of North Highland's claims—against any party—for trade secret misappropriation, civil conspiracy to breach fiduciary duties, aiding and abetting breach of fiduciary duties, or interference with contractual obligations.
37 144. Claim preclusion applies where there is "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." Id., ¶ 35 (quoting N. States Power Co., 189 Wis. 2d at 551). The absence of any element renders the doctrine inapplicable. See N. States Power Co., 189 Wis. 2d at 551. Under the circumstances presented in this case, there is clearly no identity of parties or final judgment on the merits.
¶ 145. There is no identity of parties because Wells was not a party to the bankruptcy proceeding involving Trewyn, which precipitated the settlement between North Highland and Trewyn leading to the dismissal of Trewyn alone as a party in this case. It remains uncontroverted that Trewyn and Wells are not privies.[6] Wisconsin has long held that claim preclusion *560 is unavailable if the parties are not the same. See Bentson v. Brown, 191 Wis. 460, 461—62, 211 N.W. 132 (1926). Here, North Highland wishes to proceed against Wells, not Trewyn; absent privity between the two defendants, Trewyn's dismissal from the case presents no bar to North Highland proceeding against Wells, an entirely distinct party.
¶ 146. Furthermore, there is no final judgment on the merits. Instead, Trewyn and North Highland settled the issue of whether any debt Trewyn may owe North Highland was dischargeable in bankruptcy, and this settlement included North Highland's agreement not to maintain suit against Trewyn. The settlement agreement dismissing the adversary proceeding in bankruptcy court, which led to the stipulated dismissal of Trewyn in the state court proceedings, does not even come close to an "adjudication on the merits by a court of competent jurisdiction." As this court explained in Mrozek v. Intra Financial Corp., 2005 WI 73, 281 Wis. 2d 448, 699 N.W.2d 54, a bankruptcy judgment may be a "final judgment on the merits" sufficient to satisfy the third prong under the claim preclusion doctrine, but only when the subject of the pending lawsuit was a "core proceeding" resolved by the bankruptcy court. Id., ¶¶ 29-31.[7] Regardless of the core versus non-core distinction, the bankruptcy court involved here did not litigate the subject of North High *561 land's lawsuit against Wells. Nor does it appear from this record that the bankruptcy court litigated the subject of North Highland's trade secret case against Trewyn. There was no bankruptcy court judgment on the merits of the pending lawsuit or on the facts underlying North Highland's civil suit. Rather, Trewyn and North Highland reached a settlement agreement, entered into a covenant not to sue, and stipulated to the dismissal of North Highland's adversary bankruptcy claim and distinct state court claims against Trewyn. Like the entry of a guilty plea disposing of a criminal case, which this court held did not satisfy the "actually litigated" requirement for issue preclusion to apply,[8] the settlement agreement does not satisfy the "judgment on the merits" requirement of claim preclusion because the settlement effected compromise without a judgment on the merits.
f 147. Of course, litigation in bankruptcy courts can preclude claims in subsequently filed lawsuits. See, e.g., Matrix IV, Inc. v. American Nat'l Bank and Trust Co. of Chi., 649 F.3d 539, 542, 547-52 (7th Cir. 2011) (holding that claim preclusion barred plaintiffs subsequent RICO and common law fraud action against same defendants involved in bankruptcy case where plaintiff fully "litigated and lost the very same fraud claims"). But the settlement here was unlike the cases applying claim preclusion following bankruptcy litigation. Indeed, some courts adopt a unique approach for determining whether claim preclusion *562 should bar an action when the previous claim occurred in a bankruptcy court. One court explained why:
"Because a 'bankruptcy case' is fundamentally different from the typical civil action, however, comparison of a bankruptcy proceeding with another proceeding is not susceptible to the standard [claim preclusion] analysis." Rather, a court must "scrutinize the totality of the circumstances in each action and then determine whether the primary test of. . . essential similarity in the underlying events!] has been satisfied." Also, the court must "properly tailor []" the claim preclusion doctrine to the "unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case." Ultimately, "a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum."
Haskell v. Goldman, Sachs & Co., 355 B.R. 438, 449 (Bankr. D. Del. 2006) (citations and quoted sources omitted; fourth alteration in original).
¶ 148. Here, the claims North Highland pursues against Wells were not "actually litigated" in the bankruptcy case—Wells was not even involved in the bankruptcy proceeding. Nor would it have been reasonable or possible for North Highland to litigate its claims against Wells within Trewyn's bankruptcy proceeding. North Highland's agreement to forgo its state court lawsuit against a bankruptcy debtor whose obligations were dischargeable does not bar it from pointing the finger at Trewyn to establish a conspiracy with Wells, even though Trewyn cannot be held legally liable should the jury find in North Highland's favor.
*563 ¶ 149. The absence of a judgment on the merits also defeats Wells's argument that dismissal of North Highland's underlying claims against Trewyn precludes North Highland from proving that Wells is liable under a "derivative" theory such as conspiracy or aiding and abetting. Although Wells cites several cases from other jurisdictions for the proposition that dismissal of a tortfeasor precludes further proceedings against other defendants on derivative liability theories, those cases featured actual resolution of the underlying cases on the merits, unlike the settlement at issue here.[9] Wisconsin has long recognized a plaintiffs ability to settle a claim with one joint tortfeasor while continuing to pursue a claim against another. See Imark Indus., Inc. v. Arthur Young & Co., 148 Wis. 2d 605, 621-22, 436 N.W.2d 311 (1989) (citing Pierringer v. Hoger, 21 Wis. 2d 182, 124 N.W.2d 106 (1963); Loy v. Bunderson, 107 Wis. 2d 400, 320 N.W.2d 175 (1982)). Because Wisconsin law contemplates continued proceedings after a plaintiff settles with an alleged joint tortfeasor, Trewyn's dismissal does not preclude a full hearing on the merits of North Highland's conspiracy, aiding and abetting, and interference claims against Wells.[10]
*564 ¶ 150. Trewyn's settlement with North Highland as part of bankruptcy proceedings in federal court and the subsequent dismissal of North Highland's state-court claims against Trewyn do not extinguish North Highland's previously-filed lawsuit against Wells in state court. These circumstances satisfy neither the elements of claim preclusion nor the objectives underlying the doctrine. Holding that the settlement of North Highland's adversary claim in Trewyn's bankruptcy proceeding precludes North Highland's claim against Wells could unnecessarily relieve jointly responsible tortfeasors from their legal obligations based on a dismissed defendant's fortuitous bankruptcy filing.
hH HH
I 151. In sum, I conclude that a confidential bid can be a trade secret. I would reverse the court of appeals' determination otherwise and remand to the *565 circuit court because the record contains material disputed issues of fact for a jury to resolve on whether Wells violated trade secret law. Further, the circuit court erred in concluding that North Highland's action against Wells was barred under claim preclusion based on the compromise reached between North Highland and Trewyn resolving the adversary claim North Highland asserted in Trewyn's bankruptcy proceeding, which ultimately led to the dismissal of Trewyn alone from the state court case. I would reverse the circuit court's dismissal of this case and remand for a jury trial on North Highland's conspiracy, aiding and abetting, and interference with contract claims against Wells because the circuit court previously determined that material issues of disputed facts exist with respect to those claims.
¶ 152. For these reasons, I respectfully dissent.
¶ 153. I am authorized to state that Justice DANIEL KELLY joins this dissent.

 Unfortunately, the court conducts its review of this case without the benefit of the circuit court's reasoning on the dispositive decisions. Although the record includes the circuit court's orders resolving the relevant motions for summary judgment and dismissal, those orders merely state the court's conclusions with a note that the orders were entered "[flor the reasons stated on the record." But the transcripts of the relevant hearings are absent from the record on appeal.
The appellant has the initial responsibility to request transcripts for the record, Wis. Stat. § (Rule) 809.11(4)(a), and any other party also has the opportunity to request that transcripts be included in the record, Wis. Stat. § (Rule) 809.11(5). Appellate counsel for each party have a responsibility to identify all transcripts necessary for appellate review.
When the record on appeal lacks transcripts relevant to the circuit court's orders under review and the circuit court has not issued a written order explaining the reasons for its decision, appellate courts do not receive sufficient information to review the case in its entirety. Although I conduct my review in this opinion because the case raises questions of law and we do have the circuit court's conclusions, a future appellate court may not have sufficient information to proceed if appellate counsel fail to satisfy their responsibilities under the Wisconsin Rules of Appellate Procedure.

 Chief Justice Roggensack's dissent comprehensively sets forth facts from the record, which, viewed in the light most favorable to the party opposing summary judgment (here, North Highland), show genuine issues of material fact properly resolved at trial.

 For example, working backward from Ovation Plumbing, Inc. v. Furton, 33 P.3d 1221, 1224 (Colo. App. 2001), the Colorado Court of Appeals successively cited the following cases for the principle that "[w]hat constitutes a trade secret is a question of fact": Gold Messenger, Inc. v. McGuay, 937 P.2d 907, 911 (Colo. App. 1997); Network Telecomms., Inc. v. Boor-Crepeau, 790 P.2d 901, 902 (Colo. App. 1990); Mulei v. Jet Courier Serv., Inc., 739 P.2d 889, 893 (Colo. App. 1987), rev'don other grounds 771 P.2d 486 (Colo. 1989) (en banc); Porter Indus., Inc. v. Higgins, 680 P.2d 1339, 1341 (Colo. App. 1984); Telex Corp. v. Int'l Bus. Machines Corp., 510 F.2d 894, 928 (10th Cir. 1975). The Tenth Circuit's opinion in Telex Corp. merely states that "what constitutes a trade secret... is a question of fact for the trial court." 510 F.2d at 928. In turn Telex Corp. refers to Kodekey Electronics, Inc. v. Mechanex Corp., 486 F.2d 449 (10th Cir. 1973), which offers no more justification for the standard than the fact that trade secrets are a "nebulous concept," id. at 453-55 & n.3, the same *551 unsatisfying reasoning articulated in Lear Siegler, Inc. v. Ark-Ell Springs, Inc., 569 F.2d 286 (5th Cir. 1978).

 This court's fundamental responsibility to interpret a Wisconsin statute also means Wis. Stat. § 134.90(7) does not mandate the jettisoning of our uniquely descriptive phrasing of the standard of review. Subsection (7) dictates that Wis. Stat. § 134.90 "shall be applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws." In articulating the standard of review, however, we do not "apply" or "construe" *552 any of the statute's language. Instead, the standard of review implicates the perspective from which the court approaches the statute before even considering its text. Joining other jurisdictions in repeating by rote that "the existence of a trade secret is a question of fact" risks putting before the finder of fact matters of statutory interpretation—questions of law— properly reserved for the court.

 Confirming this plain meaning, an explanatory note accompanying the enactment of Wis. Stat. § 134.90(1) quotes from a report by the national conference of commissioners on uniform state laws, which observed that the UTSA's recommended definition of "trade secret" "contains a reasonable departure from the Restatement of Torts (first) definition which required that a trade secret be 'continuously used in one's business.'" 1985 Wis. Act. 236, § 6 note.

 A "privy" refers to "[a] person having a legal interest of privity in any action, matter, or property; a person who is in privity with another." Privy, Black's Law Dictionary 1394 (10th ed. 2014). Privity can arise from various relationships. Id. (listing six types of privity). "The term also appears in the *560 context of litigation. In this sense, it includes someone who controls a lawsuit though not a party to it; someone whose interests are represented by a party to the lawsuit; and a successor in interest to anyone having a derivate claim." Id. There is no indication that Trewyn and Wells maintain any relationship of this sort relative to the present litigation.

 But see Matrix IV, Inc. v. American Nat'l Bank and Trust Co. of Chi., 649 F.3d 539, 549-52 (7th Cir. 2011) (noting a split of authority on the core versus non-core reasoning).

 See Mrozek v. Intra Fin. Corp., 2005 WI 73, ¶ 21, 281 Wis. 2d 448, 699 N.W.2d 54 (observing that the guilty plea "inquiry is not the same as a fully litigated trial between adversarial parties resulting in the fact-finder determining that the facts prove" the allegations).

 See Discon Inc. v. NYNEX Corp., 86 F. Supp. 2d 154, 165-66 (W.D.N.Y. 2000) (district court previously dismissed underlying alleged violation of Sherman Act); Barrios v. Paco Pharm. Servs., Inc., 816 F. Supp. 243, 252 (S.D.N.Y. 1993) (noting conspiracy claim precluded after considering and rejecting merits of claim against alleged co-conspirator); Richard B. LeVine, Inc. v. Higashi, 32 Cal. Rptr. 3d 244, 253-54 (Ct. App. 2005) (holding that derivative liability precluded "where plaintiff has already arbitrated or litigated against the direct tortfeasor and lost" (emphasis added)).

 North Highland also directs our attention to Muchow v. Goding, 198 Wis. 2d 609, 623, 544 N.W.2d 218 (Ct. App. 1995), *564 to argue that a settlement does not give rise to claim preclusion. But the cited portion of Muchow discusses the doctrine of collateral estoppel, now known as issue preclusion. See Paige K.B. ex rel. Peterson v. Steven G.B., 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999). "Issue preclusion addresses the effect of a prior judgment on the ability to re-litigate an identical issue of law or fact in a subsequent action." Mrozek, 281 Wis. 2d 448, ¶ 17. The doctrine precludes subsequent litigation only on questions of fact or law actually litigated in previous proceedings. Id.
Since Wells has focused his argument for dismissal on a theory of claim preclusion, I will not discuss issue preclusion in great detail. I do note, however, that the doctrine likely would not bar North Highland's claim against Wells because the extent of Wells's alleged liability to North Highland was never actually litigated during the federal dischargeability proceedings or as part of Trewyn's stipulated dismissal from this state-court action.